UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MISS LEBANON COMMITTEES
S.A.R.L. and GRACE FARAH EID,

    Plaintiffs,

v.                                                     Civil Case No. 12-12188
                                                     Patrick J. Duggan

JOUMANA KAYROUZ, ELIE FARAH,
REACH MEDIA, MISS LEBANON
EMIGRANTS USA, LLC, and
JOHN DOES ORGANIZERS OF
"MISS LEBANON EMIGRANTS",

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT [ECF NO. 56] AND DENYING AS MOOT DEFENDANT JOUMANA KAYROUZ'S MOTION TO DISMISS [ECF NO. 60]**

      On May 17, 2012, Plaintiffs filed this action against Joumana Kayrouz, Elie Farah, Reach Media, and John Does Organizers of "Miss Lebanon Emigrants" (collectively "Defendants") alleging violations of the Lanham Act and the Michigan Consumer Protection Act. Plaintiffs sought *inter alia* to enjoin Defendants from using Plaintiffs' allegedly protected mark: "Miss Lebanon Emigrant." Ms. Kayrouz has filed a counter-complaint against Plaintiffs. Presently before the Court is Plaintiffs' motion to enforce a settlement agreement

with Ms. Kayrouz, filed July 13, 2013. The motion has been fully briefed and the Court held a motion hearing on September 12, 2013.

## I.      Procedural Background

Ms. Kayrouz initially filed a counter-claim against Plaintiffs on July 6, 2012. On January 22, 2013, Ms. Kayrouz sought leave to amend her Counter-Complaint. In an affidavit attached to her motion, Ms. Kayrouz asserted that, as to the Miss Lebanon Emigrants USA beauty pageant, she has "participated for one year (2012) and do[es] not have any plans to participate in the future." (ECF No. 29 Ex. 1.) Based on this statement, Plaintiffs' counsel, Tim Galligan, believed that a settlement of the matter between Plaintiffs and Ms. Kayrouz could be easily reached as Plaintiffs' primary goal in this litigation is to clarify the parties' future right to use the mark "Miss Lebanon Emigrants." Mr. Galligan therefore sent an e-mail to Ms. Kayrouz' attorney, Steven Susser, on January 23, 2013. (Pls.' Mot. Ex. 2.)

Mr. Galligan began his e-mail:

Steven,

I noticed in Ms. Kayrouz's affidavit her statement that she has no plans to participate in this pageant [the Miss Lebanon Emigrants Beauty Pageant] in the future. My understanding was that she was committed to doing so. If Ms. Kayrouz does not intend to do so, it could reduce what is at issue because we would just be litigating as to

> what happened in 2012, as opposed to the parties' respective rights going forward.  For the same reason, I would expect that such a decision also could make this case easier to settle.  If there is any interest in resolving this matter, I would appreciate if you could clarify or expand on Ms. Kayrouz's plans in this regard.

(*Id*.)  In a response e-mail dated February 5, 2013, Mr. Susser confirmed that Ms. Kayrouz "does not have any intention of continuing in that role [a voluntary capacity with the 2012 Miss Lebanon Emigrants Beauty Pageant] in the future.  In other words, Ms. Kayrouz will not be involved in future similar pageants."  (*Id*.)

According to Plaintiffs, following Mr. Susser's response until early May 2013, Plaintiffs and Ms. Kayrouz engaged in sporadic settlement discussions.  On May 2, 2013, following a telephone discussion between Plaintiffs' and Ms. Kayrouz's counsel, counsel for Ms. Kayrouz, Brian Brown (of the same law firm as Mr. Susser), sent an e-mail to Mr. Galligan that read:

> Tim,
>
> Thank you for your settlement proposal today.  On behalf of Ms. Kayrouz, we accept; in exchange for a dismissal with prejudice and release, Ms. Kayrouz will (a) withdraw pending trademark application and (b) agree not to use the mark Miss Lebanon Emigrant(s) or other similar marks (we can work out the appropriate language).  No costs to either party.
>
> Let's wrap this up while your client is engaged.  I can send a draft settlement agreement by c.o.b. tomorrow unless you have something in the works.  Let me know.

>Regards,
>
>Brian

(Pls.' Mot. Ex. 3.)  The following day, May 3, 2013, Mr. Galligan responded: "Thank you, Brian.  Sam is drafting a settlement agreement which we will get to you shortly.  Should have this wrapped up soon.  Thanks, Tim." (*Id*. Ex. 4.)

On May 7, 2013, Plaintiffs' counsel sent Ms. Kayrouz's counsel a draft settlement agreement. (*Id*. Ex. 5.)  On May 21, 2013, Ms. Kayrouz's counsel sent an e-mail to Plaintiffs' counsel with "minor revisions" to the proposed agreement. (*Id*. Ex. 6.)  On May 26, 2013, Plaintiffs' counsel returned the draft agreement with "only one change." (*Id*. Ex. 7.)  On July 10, 2013, Mr. Susser wrote Plaintiffs' counsel on behalf of Ms. Kayrouz:

> Tim.  I spoke with my client.  We have decided not to settle this matter but to proceed with discovery.  We wish to depose Grace Farah and Antoine Maksoud in Michigan during the week of July 29, August 5, or August 9.  Please select a date that week or propose an alternative.  Once these have been completed, we can schedule the deposition of Joumana Kayrouz.  Thank you.

(*Id*. Ex. 8.)

Prior to receiving this e-mail, neither Plaintiffs nor Ms. Kayrouz pursued discovery despite the fact that the deadline for discovery was fast approaching on August 15, 2013.  Moreover, neither Plaintiffs nor Ms. Kayrouz filed witness lists

when they were due on May 5, 2013.

As indicated earlier, Plaintiffs filed a motion on July 23, 2013, seeking to enforce the settlement agreement they believe was reached between themselves and Ms. Kayrouz. Plaintiffs seek to enforce by way of their motion only the terms set forth in Mr. Brown's May 2, 2013 e-mail to Mr. Galligan. Ms. Kayrouz argues in response that there was no meeting of the minds on any settlement proposal. According to Ms. Kayrouz, Mr. Brown's May 2 e-mail reflects an offer that was never accepted because, in response thereto, Plaintiffs' counsel made counter-offers (i.e. agreements with different terms).

On August 30, 2013, Ms. Kayrouz filed a motion asking the Court to involuntarily dismiss Plaintiffs' lawsuit for failure to prosecute or, alternatively, to compel the immediate deposition of Plaintiff Grace Farah Eid.

**II.   Applicable Law**

Under Michigan law, which the parties agree governs the instant dispute, "[a]n agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452, 733 N.W.2d 766, 770 (2006) (additional quotation marks and citation omitted). "Before a contract can be completed, there must be an offer and acceptance." *Id*. "'An acceptance

sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id.* at 453-54, 733 N.W.2d at 771 (quoting *Blackburne & Brown Mortg. Co. v. Ziomek*, 264 Mich. App. 615, 626-27, 692 N.W.2d 388 (2004)).

"[A] contract requires mutual assent or a meeting of the minds on all the essential terms." *Id.* at 453, 733 N.W.2d at 770. "The primary goal of contract interpretation is to honor the intent of the parties." *Old Kent Bank v. Sobczak*, 243 Mich.App. 57, 63, 620 N.W.2d 663 (2000).

The Court may enforce a settlement agreement between parties even after a unilateral change of mind. *See Reed v. Citizens Ins. Co. of Amer.*, 198 Mich. App. 443, 447, 499 N.W.2d 22, 24 (1993) (holding that a unilateral change of mind is not an adequate ground to excuse performance of a contract to settle legal claims) (overruled on other grounds in *Griffith v. State Farm Mut. Auto. Ins. Co.*, 472 Mich. 521, 540, 697 N.W.2d 895 (2005)) (citing *Thomas v. Mich. Mut. Ins. Co.*, 138 Mich. App. 115, 118, 358 N.W.2d 902 (1984) ( "Settlement agreements should not normally be set aside and . . . once a settlement agreement is reached a party cannot disavow it merely because it has had a 'change of heart.' ")).

Additionally, "[a] valid settlement agreement need not be premised on a writing at all, let alone a writing signed by all of the parties." *Mich. Reg'l Counsel of Carpenters v. New Century Bancorp Inc.*, 99 Fed. App'x 15, 21-23 (6th Cir. Mich.2004) (enforcing a settlement agreement where all parties did not sign the settlement agreement, but all parties, by expressions of assent, agreed to the material terms of the settlement agreement).

### III.   Analysis

The May 2, 2013 e-mail from Ms. Kayrouz's counsel to Plaintiffs' counsel constituted an acceptance of Plaintiffs' settlement "proposal" which undisputedly was extended during an earlier telephone conversation. There can be no question as to Ms. Kayrouz's intent as her attorney explicitly states that, on her behalf, "we accept." Notably, Ms. Kayrouz's counsel voluntarily offered to draft a settlement agreement reflecting the terms of Plaintiffs' offer. Under Michigan contract law, "attorneys are considered to have the apparent authority to settle lawsuits on behalf of their clients, and opposing parties have the right to rely upon the existence of such settlements when agreed to by attorneys." *Michigan Reg'l Council of Carpenters*, 99 Fed. App'x at 21 (citing *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530-31 (6th Cir. 1986)).

There also can be no question as to the terms of the agreement, as they are

plainly stated in Mr. Brown's e-mail.  These are the only terms that Plaintiffs now seek to enforce.  The fact that additional terms were incorporated in subsequent written drafts of a settlement agreement to which there was dispute, does not alter the fact that an agreement was reached on the terms in the May 2, 2013 e-mail.  *See Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.  When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement."); *see also Scholnick's Importers-Clothiers v. Lent*, 130 Mich. App. 104, 109, 343 N.W.2d 249, 253 (1983) (providing that "where agreement has been expressed on all the essential terms of the contract, the mere fact that the parties manifest an intention to prepare a written memorial of their agreement does not render the oral contract unenforceable merely because the writing is never prepared").

     Contrary to Mr. Brown's assertion at the motion hearing, this Court concludes that the agreement reached was to a dismissal with prejudice as to Plaintiffs' claims against Ms. Fayrouz *and* Ms. Fayrouz's counterclaims against Plaintiffs.  Notably, in response to Plaintiffs' motion, Mr. Brown summarizes the settlement framework as consisting in part of "(1) a dismissal of *the lawsuit* with

prejudice . . .". (Def.'s Resp. Br. at 5, emphasis added.) Further, in his response brief, Mr. Brown outlines the five "material additions and alterations to the simple proposal offered by [him]" that he believes were presented in the settlement agreement drafted by Plaintiffs' counsel and sent to Mr. Brown on May 7, 2013.[1] (*Id*. at 6.) Mr. Brown never mentions the language in the draft providing that "Kayrouz and Plaintiffs will stipulate to the entry of an order dismissing *all claims in the Action between them* with prejudice and without costs." (*See, e.g.*, Pls.' Mot. Ex. 5 § 4, emphasis added.) Nor does Mr. Brown mention the language providing for Plaintiffs and Ms. Kayrouz to release each other of any claims "that were or could have been asserted in the Action, whether by way of complaint, *counterclaim*, or otherwise." (*Id*. § 7, emphasis added.) Significantly, in the revised settlement agreement that he sent to Plaintiffs' counsel, Mr. Brown neither struck nor revised the above provisions. (Pls.' Mot. Ex. 6.)

As such, the Court concludes that Plaintiffs and Ms. Kayrouz reached a settlement agreement which Plaintiffs are entitled to enforce. The Court also concludes that this agreement addressed Plaintiffs' claims against Ms. Kayrouz

---

[1] Also notable is the fact that when Mr. Brown sent revisions to the first draft of the agreement to Plaintiffs' counsel, he indicated that he had made only "minor revisions." (*See* Pls.' Mot. Ex. 6.) His current claim that Plaintiffs' "new proposal" contained "material additions and alterations" thus rings hollow.

*and* Ms. Kayrouz's counterclaims against Plaintiffs.

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion to enforce settlement agreement is **GRANTED**;

**IT IS FURTHER ORDERED**, that Ms. Kayrouz's motion to dismiss is **DENIED AS MOOT**.

Dated: September 16, 2013          s/PATRICK J. DUGGAN
                                   UNITED STATES DISTRICT JUDGE

Copies to:
Timothy E. Galligan, Esq.
Sam M. Fakih, Esq.
Steven Susser, Esq.
Brian B. Brown, Esq.